LEO J. MARTINI, PROSECUTOR, v. CIVIL SERVICE COM-
MISSION OF THE STATE OF NEW JERSEY, RESPOND-
ENT.

Argued October 6, 1942—Decided February 26, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Leo J. Martini.*

For the respondent, *David T. Wilentz,* Attorney-General,
(*Harry A. Walsh,* Assistant Attorney-General, of counsel).

The opinion of the court was delivered by

PERSKIE, J.   The question requiring decision is whether
the appointment of a clerk to the First Criminal Judicial
District Court of Hudson County is controlled by the judge
of that court (*N. J. S. A.* 2:212-10) or by the provisions of
our Civil Service Law (*N. J. S. A.* 11:4-1, *et seq.*).

The facts are stipulated and are not in dispute.  By leave
of the court, the use of the stipulation, in lieu of depositions,
was granted.  On October 20th, 1940, prosecutor, an honorably
discharged veteran of the first World War, was appointed
clerk of the First Criminal Judicial District Court of Hudson
County (*N. J. S. A.* 2:212-4.1) by the judge of that court.
*N. J. S. A.* 2:212-10.  In due season, prosecutor did "take
and subscribe" the "usual oath" of office and "entered into"
the necessary "bond" to the state "conditioned for the faithful
performance of his duties." *N. J. S. A.* 2:212-11.  He imme-
diately entered upon his duties and has since continued to
serve as such clerk receiving the emoluments incident to his
"state office."

Upon receipt of notification from the judge of prosecutor's appointment, the Civil Service Commission, pursuant to its practice of placing the office of clerks of Criminal Judicial District Courts "in the competitive division of the classified service" (*N. J. S. A.* 11:4-3), ordered that a "competitive examination" be held for the office, and that pending the result of that examination prosecutor's "temporary" appointment be approved. The Civil Service Commission notified the judge of its action and, taking the position that there was an "existing vacancy" in the office, caused public notice to be advertised of the "civil service test" to be held, for said office, on April 30th, 1942.

Prosecutor requested the Civil Service Commission to withdraw its advertised test or examination. That request was based on the premise that he was entitled to "tenure of office" during good behavior, both under *N. J. S. A.* 2:212-10 and *N. J. S. A.* 38:16-1, *et seq.* (Veterans Tenure of Office Act). His request was ignored. He thus invoked the aid of this court which granted him a writ of *certiorari* to review the actions of the Civil Service Commission in determining that his appointment is controlled by our Civil Service Law (*N. J. S. A.* 11:4-3), which has for its source L. 1930, ch. 176, p. 631, § 44, suppl. to L. 1908, ch. 156, p. 235, and provides:

" 'Classified service' means, unless otherwise provided in this subtitle, all positions in the state service, whether paid or unpaid, full time or part time, whether existing or hereafter created, except positions held by persons enumerated in section 11:4-4 of this title."

*N. J. S. A.* 2:212-10, upon which prosecutor relies, is made applicable to the First Criminal Judicial District Court by *N. J. S. A.* 2:212-4.5. It has for its source L. 1926, ch. 204, p. 340, §§ 12 and 13, and provides:

"Each judge of a criminal judicial district court may appoint a clerk of his court, who shall hold office during good behavior, and who shall be removed for cause only after an opportunity to be heard respecting the cause assigned for removal.

"An order for removal shall not be effective and operative

until the proceedings for removal are reviewed and approved by a judge of the court of quarter sessions, or the justice holding the circuit of the Supreme Court in the county in which the criminal district court exists."

Both *N. J. S. A.* 11:4-3 and *N. J. S. A.* 2:212-10 constitute a part of the independent enactment of the revised (1937) public statute law of our state. *Cf. Duke Power Co.* v. *Somerset County Board of Taxation,* 125 *N. J. L.* 431, 433; 15 *Atl. Rep.* (2d) 460. As such, we treat them as statutes in *pari materia* just as we similarly treated the Municipalities Act, the Walsh Act and the Civil Service Act. *Cf. Newark* v. *Civil Service Commission,* 112 *N. J. L.* 571, 573; 172 *Atl. Rep.* 589; *affirmed,* 114 *N. J. L.* 185; 176 *Atl. Rep.* 164; *Newark* v. *Civil Service Commission,* 114 *N. J. L.* 406, 411; 177 *Atl. Rep.* 121. So treated, our answer to the posed question requiring decision is that the provisions of our Civil Service Law, *supra,* are controlling.

It will be observed instantly that *N. J. S. A.* 2:212-10 is, by way of illustrations and not of limitations, unlike the act concerning the appointment of "clerks, deputy clerks and other employees" in night police courts (*N. J. S. A.* 2:219-53 and 2:219-54), and the act concerning the right of "county investigators" to take examinations for the office of "county detective" (*N. J. S. A.* 2:181-7) in that it makes no provision, *pro* or *contra,* as to the applicability of our Civil Service Law in the appointment of a clerk in a Criminal Judicial District Court. The absence of such a provision is not necessarily conclusive. To hold otherwise would be to render nugatory the policy and purpose sought to be effectuated by our Civil Service Law. Thus again by way of illustrations and not of limitations, our courts have held that the absence in a statute of a provision specifically making the subject-matter of the legislation subject to our Civil Service Law did not render inapplicable our Civil Service Law to the appointment of a "clerk" in District Courts of our state (*Wilson* v. *District Court,* 93 *N. J. L.* 103; 107 *Atl. Rep.* 589), of a "jail warden" (*Sullivan* v. *McOsker,* 84 *N. J. L.* 380; 86 *Atl. Rep.* 497), of "employees of a free public library" (*Trustees of Free Public Library of Newark* v. *Civil*

*Service Commission,* 83 *N. J. L.* 196; 83 *Atl. Rep.* 980; *affirmed,* 86 *N. J. L.* 307, 308; 90 *Atl. Rep.* 261), or of a "secretary to a sheriff" (*Young* v. *Civil Service Commission,* 127 *N. J. L.* 329; 22 *Atl. Rep.* (2d) 523). Nor is our Civil Service Law rendered inapplicable as to those who enjoy tenure of office in the police department of a municipality under the Home Rule Act (*Cf. Albert* v. *Caldwell,* 123 *N. J. L.* 266, 268; 8 *Atl. Rep.* (2d) 700), nor to those who as "chancemen" or others seek appointment as policemen (*Cf. Albert* v. *Caldwell,* 127 *N. J. L.* 202; 21 *Atl. Rep.* (2d) 782).

The holding in the case of *Corcoran* v. *McCarthy,* 8 *N. J. Mis. R.* 281; 149 *Atl. Rep.* 765, is not applicable to the case at bar; it is clearly distinguishable. It relates to the removal of a clerk of the First Criminal Court of Bergen County and not to his appointment. It is true that the Supreme Court based its decision upon the fact that the prosecutor was removed under *Pamph. L.* 1926, *ch.* 204, § 13, without opportunity to be heard. It is also true that an inspection of the record and briefs discloses that it was argued for respondents —judges of the First Criminal District Court of Bergen County and of the Bergen County Court of Quarter Sessions —that prosecutor's dismissal was legal because he failed to invoke the prescribed procedure of review under our Civil Service Law and which law—it is interesting to observe—it was argued applied to prosecutor's office as clerk. The Supreme Court passed the latter argument *sub silentio.*

Our Court of Errors and Appeals in affirming *Trustees of Newark Library* v. *Civil Service Commission,* 86 *N. J. L.* 307, 308, points out that neither the "character" nor the "method" of "selection" supplies the "test" as to the "application" of our Civil Service Law. The "essential inquiry" is whether the incumbent is in the paid service of the state.

Concededly prosecutor is a state officer, in the "state's service" and, therefore, is subject to the provisions of *N. J. S. A.* 11:4-3 (classified service). The "welfare of the people" is the "broad policy" that "underlies" our Civil Service Law. It is a policy which aims to give to the people "good and efficient service." To that end, "widest range" is given to the applicability of our Civil Service Law. *Sullivan* v. *McOs-*

*ker, supra* (at *p.* 385). By such application real meaning is given to our Civil Service Law which, among other things, aims to provide "a modern personnel system  *  *  * for the application of correct business principles in the creation  *  *  * of positions  *  *  * and for the selection, certification, appointment, regulation and tenure of persons holding such positions," *N. J. S. A.* 11:4-1, and further aims to make "appointments to  *  *  * the civil service of the state  *  *  * only according to merit and fitness to be ascertained, as far as practicable, by examinations, competitive, if practicable.  *  *  *" *N. J. S. A.* 11:4-2.

The Civil Service Commission has, since the creation of Criminal Judicial District Courts in 1926, treated the office of "clerk" of those courts as being subject to the provisions of our Civil Service Law. The judge of the court involved so treated it although it is here suggested, for the first time, that he did so improperly. The legislature with knowledge of this uniform construction did nothing to indicate its disapproval thereof. *Cf. Young* v. *Civil Service Commission, supra.* We, too, adopt such contemporaneous construction given to it. *State* v. *Kelsey,* 44 *N. J. L.* 1; *Graves* v. *State,* 45 *Id.* 203; *affirmed,* 45 *Id.* 347; *Central Railroad Co.* v. *Thayer-Martin,* 114 *Id.* 69, 80; 175 *Atl. Rep.* 637; *Burlington County* v. *Martin,* 129 *N. J. L.* 92; 28 *Atl. Rep.* (*2d*) 116.

Prosecutor's status as a veteran (*N. J. S. A.* 38:16-1, *et seq.*), and his right to certain preferences did not relieve him from the necessity of taking a competitive examination. *N. J. S. A.* 11:27-1, *et seq.*

The writ is dismissed, with costs.