500 P.2d 329

STATE of Arizona PERSONNEL COMMIS-
SION et al., Appellants,

v.

Afton WEBB, Appellee.

No. 1 CA–CIV 1669.

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 24, 1972.

Rehearing Denied Sept. 21, 1972.

Review Denied Oct. 24, 1972.

Gary K. Nelson, Atty. Gen. by Peter C. Gulatto, and Myron Shapiro, Asst. Attys. Gen., Phoenix, for appellants.

Gary Peter Klahr, Phoenix, for appellee.

HAIRE, Chief Judge, Division 1.

Two questions are presented on this appeal from a judgment which held that the State Personnel Commission could not order that *back pay be withheld* when a previously dismissed "state service" employee is ordered reinstated.

1. Rule 11.2(1), Arizona State Personnel Commission Rules for State Service Agencies, reads in part as follows:
"In the event the Commission orders the respondent to reinstate the appel-

The trial judge concluded that there was no statutory authority for the Commission's Rule 11.2(1) [1] which authorized reinstatement *without back pay*, and entered his judgment requiring full payment to the employee. The appellee-employee additionally urged in the trial court, and urges before this Court, that even if there is statutory authority for the Commission's Rule 11.2 (1), the facts do not justify either dismissal or the imposition of the loss of pay penalty.

In entering its "Findings of Fact, Conclusions of Law and Order" requiring reinstatement without back pay, the Commission concluded that there was ". . . some truth to the allegations made in the notice of dismissal . . .," but that the dismissal ". . . action taken by the Highway Department was too severe and not totally justified . . .;" that the employee ". . . did display improper attitude in the performance of her duties . . ., but that the improper attitude was not sufficient grounds for dismissal." The Commission then entered its order restoring the employee to her former position, but without back pay from the date of her formal dismissal to the date of the Commission's order, a period of approximately two months. Although not expressly so worded, the effect of the Commission's order was to modify the employee's notice of dismissal so as to impose a lesser disciplinary action—a temporary suspension without pay. The trial court viewed this action as an attempt to "retroactively" suspend an employee without pay and thus to be contrary to the provisions of A.R.S. § 38–904, subsec. 16, which reads as follows:

"The rules of the commission shall include:

\* \* \* \* \* \*

"16. Suspension without pay when by reason of misconduct or for other valid cause an employee must be removed im-

lant, it may also order the respondent to reinstate the appellant with or without back pay for such period and in such amounts as the Commission deems proper under the circumstances."

mediately from his position. A statement of reasons and of the action taken shall be filed with the commission."

█ Here the employee had previously been meted the disciplinary action of dismissal, in effect a permanent suspension without pay. Had the *employer* attempted at the time of that dismissal to deprive the employee of pay earned prior to her dismissal, then we might possibly have before us a question of improper "retroactive suspension without pay". But that is not the situation presented to us. We are concerned with an order entered by the Commission on an appeal to it, and the real question concerns the scope of the *Commission's* authority when entering an order at the termination of such appeal proceedings. Is its authority limited to either affirming or reversing the action taken by the employer, or does it have authority to modify or ameliorate an unduly harsh action taken by the employer when in the opinion of the Commission the employee's conduct has been such as to justify the imposition of a lesser sanction allowed by the State Merit System law? A.R.S. § 38–910 governs appeals to the Commission, and we find no language in its provisions purporting to limit the action which the Commission may take when it issues its order.[2] In the absence of such limitations a civil service commission has the power to modify, as well as to reverse or affirm the decision of the employing agency. Hackett v. Morse, 45 Cal.App. 788, 188 P. 308 (1920); Groehn v. Michigan Corporation & Securities Commission, 350 Mich. 250, 86 N.W.2d 291 (1957). *Cf.* City of Newark v. Civil Service Commission, 114 N.J.L. 406, 177 A. 121 (1935). Any other approach would result in an inflexibility inconsistent with the orderly, swift and just disposition of merit system appeals.

█ We therefore reject the trial court's conclusions that the Commission's Rule 11.2(1) is invalid. In our opinion the subject matter of the rule does not transcend the boundaries of the statutory powers granted to the Commission, and its promulgation constitutes a valid exercise of the Commission's expressly granted rule-making powers. No unlawful delegation of legislative powers is involved, inasmuch as

---

2. The pertinent portions of A.R.S. § 38–910 read as follows:

"A. Any employee who is dismissed, suspended or demoted, after completing his probationary period of service as provided by the rules of the commission, shall have the right to appeal to the commission not later than thirty days after the effective date of such action. The employee shall be furnished with specified charges in writing when the action is taken. Such appeal shall be in writing and shall be heard by the commission within thirty days after its receipt. The commission shall furnish the employing agency with a copy of the appeal in advance of the hearing.

"B. Hearings on such appeals shall be open to the public, except in cases where the employee requests a confidential hearing, and shall be informal with technical rules of evidence not applying to the proceedings except the rule of privilege recognized by law. Both the employee and his employing agency shall be notified reasonably in advance of the hearing and may select representatives of their choosing, present and cross-examine witnesses, and give evidence before the commission. The commission, or a duly appointed hearing officer, shall conduct the hearing and is authorized to take evidence and exercise the rights prescribed by § 12–2212. The commission shall prepare an official record of the hearing, including all testimony recorded manually or by mechanical device, and exhibits, but it shall not be required to transcribe such record unless requested by the employee, who shall be furnished with a complete transcript upon the payment of the actual cost.

"C. Within thirty days after the conclusion of the hearing, the commission shall make and fully report in its permanent records, findings of fact, conclusions of law when the construction of a rule, regulation, or statute is in question, reasons for the action taken and its order based thereon, which shall be final subject to action by the court on appeal as provided in this section, at the same time sending a copy of the findings, conclusions, and order by registered mail to the employing agency and to the employee at his address as given at the hearing or to a representative designated by him to receive the same."

A.R.S. § 38–904, subsec. 16 expressly provides a standard for suspension—misconduct or other valid cause [3] requiring that the employee be immediately removed from his position. We cannot assume that either the employing agency or the Commission would suspend an employee without pay unless it found that at the time of the suspension conditions required that the employee "be immediately removed from his position".

■ However, our above conclusion does not necessarily mean that the trial court's judgment must be reversed. One of appellee's contentions in the trial court was that the order of the Commission was unsupported by any evidence as disclosed by the entire record and was founded on an error of law.[4] Of course, if there are any grounds which support the trial court's judgment, even though not relied upon by the trial judge, we must affirm. In re Sherrill's Estate, 92 Ariz. 39, 373 P.2d 353 (1962); City of Tucson v. Morgan, 13 Ariz. App. 193, 475 P.2d 285 (1970).

Basically, appellee's contention in this regard is that all of the alleged acts of misconduct which culminated in the Commis-

sion's finding of "improper attitude" occurred during the time she was a probationary employee and that such acts were known to her supervisors prior to the time the decision was made to give her permanent status; that there is no allegation or proof of misconduct on her part after she became a permanent employee; and that therefore she could not be disciplined without a showing of further acts of misconduct *after she achieved permanent status*. A consideration of appellee's contentions in this regard requires further detailing of the evidence before the Commission and an examination of pertinent statutes relating to the rights of "probationary" and "permanent" employees.

Appellee began her employment as a probationary employee in March of 1969. In August, 1969 her performance was reviewed by the appropriate supervisory personnel, and she was granted permanent status effective September 1, 1969. Shortly thereafter, several employees complained to the supervisory personnel about appellee's being given permanent status, and threatened to resign if she were retained. Appellee was then orally dismissed on Sep-

---

3. See also A.R.S. § 38–912.

4. A.R.S. § 38–910, subsections D, E and F, govern appeals from the Commission. These subsections read as follows:

"D. Within thirty days after the recording of the order and the mailing thereof, the employee may appeal to the superior court of the county of residence on one or more of the following grounds, that the order was:

"1. Founded on or contained error of law which shall specifically include error of construction or application of any pertinent rules.

"2. Unsupported by any evidence as disclosed by the entire record.

"3. Materially affected by unlawful procedure.

"4. Based on violation of any constitutional provision.

"5. Arbitrary or capricious.

"E. The grounds prescribed by subsection D, shall be stated in a written notice of appeal filed with the court, with copies served on the commission and on the employing agency. Within thirty days after service of such notice or within such

further time as the court may allow, the commission shall transmit to the court a certified transcript, with exhibits of the hearing. By stipulation between the employing agency and the employee, the transcript may be shortened and either party unreasonably refusing to stipulate to such limitation may be ordered by the court to pay the additional cost involved. The court may require or permit subsequent corrections or additions to the transcript.

"F. The court shall review the hearing on the basis of the transcript and exhibits, except that in case of alleged irregularity in procedure by the commission not shown by the transcript, the court may order further testimony. The court shall upon request by either party hear oral arguments and receive written briefs. The court may affirm the order of the commission, remand the matter for further proceedings before the commission, or reverse or modify the order. Appeal shall be available to the courts of appeal from the order of the superior court as in other civil cases."

tember 4, 1969.[5] There is no contention that she engaged in any wrongful conduct during the time she worked after achieving permanent status.

A.R.S. § 38–904, subsec. 9, provides as follows:

"The rules of the commission shall include:

\*    \*    \*    \*    \*    \*

"9. A reasonable period of probationary service during which the probationary employee shall perform the actual duties of the position before his appointment or promotion may be final, and during which period a probationer may be discharged or reduced in class or rank, or replaced on the eligibility list. In no event shall a reasonable period of probationary service be construed to mean less than ninety days."

■ It is undisputed that at the time appellee was discharged she had completed her probationary service and had achieved permanent status. Therefore, we are concerned with the rights which under the statutes and rules of the Commission, must be accorded to a permanent employee, and the effect to be given to the decision of the employing agency to give her permanent status. Preliminarily, we note that we find no statute which expressly states that a permanent employee may not be dismissed or disciplined except for cause. We are aware of the provisions of A.R.S. § 38–912 which lists "Causes for dismissal or discipline". This statute is not, by its terms, limited to permanent, as opposed to probationary employees, and only by implication can it be held to restrict the discipline of permanent employees to situations involving "cause". However, we think such a restriction was intended.

We look now to the Commission's rules for a review of the process involved in granting permanent status to an employee. Rule 8 provides in pertinent part as follows:

"8.1 NATURE, DURATION, and PURPOSE

"(a) The probationary period shall be utilized for the most effective adjustment of a new employee and for the elimination of any employee whose performance does not in the judgment of the appointing authority meet the required standard of performance.

"(b) The probationary period for the State Service shall be six months.

\*    \*    \*    \*    \*    \*

"8.2 CONDITIONS PRELIMINARY TO PERMANENT STATUS

"(a) The appointing authority shall evaluate a probationary employee and submit a report to the Director on a form prescribed by him at least fifteen days prior to the expiration of the employee's probationary period.

"(b) If the appointing authority determines at any time during the probationary period that the services of a probationary employee are unsatisfactory, the employee may be separated upon written notice by the appointing authority. Unless the appointing authority recommends the probationary employee for permanent status, or unless his probationary period is extended, the probationary employee shall be separated automatically at the expiration of his probationary period."

The procedures required by the above-quoted rules were followed by the employing agency. Prior to the expiration of the probationary period, Mr. Holsten, the

---

5. The appellants admit that the oral dismissal of September 4, 1969 was ineffective because of failure to comply with the provisions of A.R.S. § 38–910, subsec. A, which require a written notice of specific charges at the time of dismissal.

Such written notice was subsequently given and appellee was paid for the interim period between the time of the oral and written notice, although she was not allowed to work during this interim period.

head supervisor, and two subordinate supervisors met to review appellee's performance during her probationary period. At that time they reviewed some problems that had arisen in relationship to her work and decided that they were not sufficiently substantial to prevent them from making her a permanent employee. They then took the necessary action so as to grant appellee permanent status as of September 1, 1969. After September 1, 1969, when the permanent status action became known, five employees visited Mr. Holsten and threatened to resign. They made general comments about appellee's performance and attitude and her ability to get along with others. Mr. Holsten then had another meeting with the two subordinate supervisors and they decided to dismiss appellee.

Upon appellee's appeal to the Commission from this dismissal, at the hearing before the Commission's hearing officer, Mr. Holsten intimated that he received new information at the meeting with the employees. However, we have reviewed the transcript of that hearing and agree with the hearing officer's summarization of the facts as follows:

" . . . it appears that all the information about particular incidents or about Miss Webb's [appellee's] ability to get along with others was known, at least to Mrs. Nelson [subordinate supervisor] and in part at least to Mr. Holsten and Mr. Jones [subordinate supervisor] at the time the original decision was made. On the facts here, it is likely that the only information which was not available to the supervisors at the time the decision to make Miss Webb a permanent employee was made but which became available later was that other employees were threatening to resign if she were retained Since that information can have no legal effect—it does not remotely resemble any of the permissible grounds for dismissal outlined in A.R.S. § 38–912 A.—[W]e are faced squarely with the question of

the legal meaning to be attached to the designation 'permanent'."

\* \* \* \* \* \*

"Mr. Holsten's testimony makes clear that the evaluation at the time the first decision was made was not a perfunctory one; some employees whose probationary period is ending are in fact not made permanent. In making the decision on permanent status, Mr. Holsten was thus performing precisely what his function should have been: the evaluation of his subordinate's overall performance. There were some questions in his mind about [appellee's] attitude—but not the quality of her work—and these questions were not substantial enough to interfere with the granting of permanent status.

"In contrast, the performance of these supervisors after the other five employees complained is difficult to understand. There was apparently no effort to establish the validity of their charges by an independent investigation; Miss Webb was given no opportunity to rebut them; no effort was made to reach an accommodation; and, even though the original decision was made in the hope that Miss Webb would change conduct Mr. Holsten thought was undesirable, no chance was given her to do this.[1] Instead, as Mr. Holsten agreed, they attempted in effect to rescind the decision on permanent status—after it had gone into effect."

"1. Mr. Holsten testified that no conditions were attached to the decision on permanent status, but that the supervisors would talk to her in an effort to correct her mistakes."

The hearing officer then concluded:

"This is not to say that the employee's slate is 'wiped clean' by a decision to grant permanent status. It is appropriate for the employee's conduct prior to the decision to be taken into consideration in a subsequent decision on dismissal.

But it is necessary for there to be some additional grounds for dissatisfaction with the employee subsequent to the decision on permanent status. Thus, if the employee has a few 'demerits' which are not sufficient in themselves to prevent the grant of permanent status, additional demerits should be required before dismissal; but if these additional demerits are found, then it is appropriate to consider the employee's overall record in the decision on dismissal."

■ We agree with the hearing officer's conclusions. A different result might be required if the alleged misconduct of appellee had been concealed and not discovered until after permanent status had been achieved, or if the alleged misconduct had occurred after the supervisory evaluation but before the attainment of permanent status. We therefore conclude that there was insufficient cause shown for the dismissal, suspension or imposition of any disciplinary action against appellee. We recognize that there was substantial evidence of misconduct on appellee's part during her probationary period of employment. However, this misconduct was fully evaluated by the employing agency and a decision made to give her permanent status. As aptly stated by the hearing officer, if permanent status means anything, it must mean that it is a status which is *not* subject to a changed mind. Any other decision would result in a substantial impairment of the status of permanent employment, rendering practically meaningless the performance review procedures prerequisite to attaining that status. Here, all we have is a belated attempt to reconsider and withdraw permanent status already granted to the appellee.

The judgment of the trial court is therefore affirmed.

EUBANK and JACOBSON, JJ., concur.