643 P.2d 505

Floyd E. ROLFE, Petitioner-Appellant,

v.

STATE of Arizona, ex rel. John HUERTA, Director of Department of Economic Security, Arizona State Personnel Board, its Members, Merle L. Farmer, Mimi Morron, Delbert J. West, Thomas Facio and Jack Stanton, Respondents-Appellees.

No. 1 CA–CIV 5062.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 19, 1982.

Rehearing Denied March 26, 1982.

Review Denied April 13, 1982.

Guttilla & Hozier, P. C. by Nicholas C. Guttilla, Phoenix, for petitioner-appellant.

Robert K. Corbin, Atty. Gen. by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for respondents-appellees.

## OPINION

JACOBSON, Presiding Judge.

The sole issue on this appeal is whether the State Personnel Board (Board) fashioned a proper remedy for appellant, a permanent state employee, who had been subjected to an improper job reclassification.

This dispute arose out of a purported reorganization of the Department of Economic Security (DES), undertaken by then director of DES, John Huerta. To properly understand the reorganization attempts and appellant Floyd E. Rolfe's (Rolfe) position in the DES structure some background information is necessary.

Prior to the creation of the Department of Economic Security in January, 1973, there existed an Office of Economic Opportunity which was concerned with the implementation on a state level of the programs

prescribed by the Federal Economic Opportunity Act of 1967. The Office of Economic Opportunity operated directly under the supervision of the governor of Arizona. With the creation of DES, the functions of the Office of Economic Opportunity were transferred to DES and became known as the Bureau of Community Support (BOCS). In January, 1974, Rolfe became head (bureau chief) of BOCS.

In July of 1975, John Huerta became director of DES and immediately felt the department was in need of reorganization. Of particular concern was the operation of BOCS which Huerta felt was organizationally misplaced, was not responding to his aims and directions, and was not properly performing a legitimate function. In response to these concerns, Huerta employed Antonio Guzman as special assistant in planning to study the BOCS problem.

As a result, on January 30, 1976, the entire staff of BOCS was informed that BOCS would be abolished effective March 1, 1976, and that Reduction in Force Procedures (RIF) would be invoked as of that date.[1] The abolishment order was continued until April 16, 1976, and as a result of the RIF procedures, Rolfe, as of May 6, 1976, was reassigned from his former position as Community Program Director, grade 22, to a position as Manpower Specialist III, grade 17, where he is presently employed. Rolfe's reclassification came about apparently from the inadequacy of Rolfe's application for vacant or "retreat jobs"[2] when BOCS was abolished.

Following the abolishment of BOCS, its functions were transferred to a new operative unit called the State Economic Opportunity Office (SEOO) headed by Guzman as the "acting" chief. The State Personnel Board found that in May, 1976:

There was no *bona fide* abolishment of the Bureau of Community Support, inasmuch as the funding, mission and function which justified its existence were continued without interruption under the nomenclature . . . of an Office of Economic Opportunity.

However, the Board further found that as a result of additional reorganization accomplished in September, 1976, the Office of Economic Opportunity, the successor of BOCS, became a part of a new Bureau of Special Programs which had additional programs and functions not previously performed by BOCS, and that under this final reorganization the position of Bureau Chief formerly held by Rolfe would be analagous to a Section Chief under the Bureau of Special Programs. Under the reorganized Bureau of Special Programs, the position of Section Chief did not exist.

As the result of Rolfe's reclassification, he filed an appeal with the State Personnel Board which was initially rejected. Following various grievance procedures, Rolfe again on November 26, 1976, appealed to the Board which granted him a hearing in May, 1977, to determine whether his reduction from grade 22 to grade 17 was part of a legitimate RIF procedure or whether the reassignment was in fact a disciplinary demotion accomplished without proper safeguards.

The Board after six days of hearing, concluded that the machinations of DES in abolishing BOCS in May, 1976, were illegitimate but became legitimate in September, 1976, when the Bureau of Special Programs was established and that because the initial abolishment of BOCS was not a *"bona fide"* reduction in force, Rolfe was entitled

---

1. Arizona Compilation of Rules and Regulations, (hereafter ACRR) Rule R2–5–32(B)(1) (Supp. 75–1, 10/31/75) provides:

   An appointing authority may lay off an employee in the state service whenever it is necessary by reason of shortage of funds or work, or by reason of a *bona fide* abolishment of or a change in the duties of a position, or when the agency is reorganized and the need for the position is eliminated.

2. ACRR, R2–5–32(B)(3) (Supp. 75–1, 10/31/75) provides:

   No employee with permanent status is to be separated by layoff while there are provisional, temporary, emergency, seasonal or probationary employees serving in the agency in the same, or equal or lower level positions for which such permanent status employee or employees are qualified and available for reassignment.

to reallocation privileges [3] which were not afforded him. While tacitly recognizing that reallocation would have required Rolfe to fill the position taken by Guzman as "acting" head of the new SEOO, the Board further found that this position no longer exists under the legitimate reorganization of that section accomplished in September, 1976. The Board further found that the only other grade 22 position which Rolfe was qualified to fill was occupied by an individual who had seniority rights superior to Rolfe.

In the remedy fashioned by the Board, Rolfe was "redlined" [4] in his present position; was granted the privilege of serving as Community Service Administrator Section Chief if such a position is ever created; and was afforded repromotion privileges for one year in the event that the Section Chief position was not created.

Rolfe timely appealed the Board's decision to Superior Court, contending that the "frozen" redlining remedy granted by the Board was not adequate for while it maintained his salary at the grade 22 level, it denied him merit increases, cost of living increases and "advancement opportunities." The trial court affirmed the Board's decision and Rolfe has timely appealed to this court.

Rolfe's basic position on appeal is that his reduction from a grade 22 to a grade 17 was a "demotion" because the abolishment of the section he headed was not *bona fide* ; that this "demotion" was not accompanied by the procedural safeguards contained in the state merit system; and that the remedy for improper "demotion" was reinstatement to his prior position.

We agree, as we believe the Board agrees, that Rolfe's reclassification from a grade 22 to a grade 17 constituted a "demotion." *See Butterworth v. Wiley*, 123 Ariz. 419, 600 P.2d 32 (Ariz.App.1979). However, designating what occurred to Rolfe as a "demotion" is not particularly helpful in this case. While determining whether a permanent state employee has been demoted or reclassified may be important in determining whether that employee is entitled to judicial review under A.R.S. § 41–785 (dealing with "demoted" employees) or under the Administrative Review Act, A.R.S. § 12–901 et seq., here there is no contention that Rolfe did not receive a full and proper hearing before the Board where his status was fully considered or that in some manner judicial review was improperly withheld.

What we perceive Rolfe's demotion argument to be is that the only remedy which the Board can give to an employee who has been improperly demoted is reinstated to his former position. As Rolfe states in his brief, "He is entitled to be reinstated to his former position or comparable position and to be returned to the status quo or made whole." While again we agree that reinstatement may, in a given case, be the proper remedy for improper state action, *see, State Personnel Commission v. Webb*, 18 Ariz.App. 69, 500 P.2d 329 (1972), here reinstatement will not work for the simple reason that the position Rolfe formerly occupied no longer validly exists, nor, apparently does a "comparable" position which Rolfe is qualified to occupy. Rolfe does not contend that the Board should have ordered DES to create a position of "Bureau Chief" out of whole cloth.

---

3. ACRR, R2–5–41(C)(3) (Supp. 75–1, 10/31/75) provides:

> The reallocation of existing positions:
> The Assistant Director shall change the classification of an existing position when a material and permanent change in the duties and responsibilities of the position occurs. In all cases of reallocation of a filled position, *the employee in the position at the time of reallocation shall be entitled to continue to serve therein.* (Emphasis added).

4. "Redlining" means that when an employee's position is reduced in salary grade due to reclassification, the salary in the new position is maintained at the level of the old position, until such time as the salary actually paid for the reduced position reaches or exceeds the old position's salary. By "redlining," an employee is frozen at a given salary until the new position's salary exceeds the old.

Nor are we convinced that the failure of the Board to make Rolfe whole by granting him merit and cost of living increases and "employment opportunities" at the grade 22 salary was an abuse of discretion. The Board was faced with a situation where what improperly occurred to Rolfe on May 6, 1976, was corrected some four months later in September, 1976. In other words, if DES had done in May, 1976, what it did in September, 1976, Rolfe would be in exactly the same position he is today, that is, looking for a vacant or "retreat" job under a valid layoff or "redlined" at a lower position. The Board may well have considered that Rolfe's mistreatment for four months was *de minimis* under these circumstances.

In our opinion, the Personnel Board must not only consider the rights of state employees, but also the legitimate rights and aims of state agencies in providing efficient state government. When these rights clash, the Board should be free to fashion reasonable remedies which give due consideration to both parties and are consistent with its statutory and regulatory authority.

In our opinion, the remedy granted Rolfe here meets these criteria. Judgment affirmed.

WREN, C. J., JACOBSON, P. J., and YALE McFATE, Judge, concur.

*Note*: The Honorable YALE McFATE, a retired judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.