EDMUND WILSON, ATTORNEY-GENERAL, EX REL. PATRICK J. SULLIVAN, PLAINTIFF IN ERROR, v. JOHN J. McOSKER, DEFENDANT IN ERROR.

Argued November 20, 1912—Decided March 3, 1913.

1. The relator was selected and employed by Sheriff K., of Hudson county, warden of the Hudson county jail, and was such warden at the time when the Civil Service law went into operation. The term of the official position held by the relator was not fixed by law.  The warden's compensation for services is paid out of the county funds.  Sheriff W., the successor in office to Sheriff K., removed the relator without charges having been preferred against him and without affording him a hearing.  *Held*, that the relator was an employe in the paid service of the state and under the protection of the Civil Service law of 1908 (*Comp. Stat.*, *p.* 3795) and hence his removal was unlawful.

2. Although section 4 of the act of 1905 (*Pamph. L.*, *p.* 19) empowers the sheriff to select and employ the necessary deputies and assistants to aid him in governing the jail, they do not thereby become his personal employes, who may be removed arbitrarily, but they become and are minor public officials in the paid service of the state, acting under the supervision of a higher public officer, upon whom is cast the performance of public duties in the maintenance and government of the county jail—a county institution—and for any misconduct in the performance of such duties they are amenable to the public.

3. There is nothing in the Civil Service law which prevents the discharge of an employe who proves to be incompetent or is guilty of official misconduct upon charges made and after a hearing.

4. *Arbuckle* v. *Kelly*, 49 *Vroom* 94, disapproved.

5. The Civil Service law emphasizes a broad public policy to secure efficient service in the various departments of the government of this state and therefore the widest range should be given to its applicability.

On error to the Supreme Court, whose opinion is reported in 54 *Vroom* 16.

For the plaintiff in error, *Collins & Corbin.*

For the defendant in error, *Joseph M. Noonan.*

The opinion of the court was delivered by

KALISCH, J. The relator, Patrick J. Sullivan, was the warden of the Hudson county jail at the time when the Civil Service law went into operation, having been appointed to that position by Sheriff Kelley. Sheriff Wedin, who was Sheriff Kelley's successor, removed Sullivan without charges or hearing and appointed John T. McOsker in his place. The relator attacked this appointment by *quo warranto,* and the facts being undisputed, the defendant filed a demurrer, which was sustained by the Supreme Court and judgment given in favor of the demurrant. This judgment is now here for review on error. The only question involved and presented is the applicability of the Civil Service law of 1908 (*Comp. Stat., p.* 3795), to the position of warden held by the relator.

The position assumed by the defendant is that the warden or head-keeper of the common jail did not hold his office under the government of the county, but was an "officer, appointee and employe of the sheriff," and therefore not within the protection of the Civil Service law and hence was removable at the pleasure of the sheriff without a hearing or charges. To support this assumption it is argued that from the very earliest period in the history of jails in England and in this state the sheriff was the absolute custodian of the jail, and was held personally responsible for its management and for the escape of any prisoner confined therein. His employment of assistants to aid him in governing the jail was a personal one, and created the relation of employer and employe between them—the assistants being paid out of the emoluments of his office. That the act of 1905 in providing a salary for the sheriff in lieu of fees did not affect the na-

ture of the relation existing between the sheriff and the head-keeper of the jail, the effect of the act being to transfer the disbursing of the funds for the maintenance of the jail from the sheriff to the financial officers of the county. And it is further argued that the fourth section of the act of 1905 in providing as follows: "Said sheriff shall select and employ the necessary deputies and assistants for said office, who shall receive such compensation as shall be approved by the board of chosen freeholders, and who shall be paid monthly by the proper disbursing officer of the said counties on warrants authorized by the board of chosen freeholders of their respective counties," is declaratory of the theretofore existing relationship of employer and employe between the sheriff and his appointees, and emphasizes the force of the contention that the statute left unimpaired the sheriff's absolute right to appoint and remove his subordinates, by having expressly declared it to be his right and duty to select and employ them. And also because the seventh section of the act provides that nothing contained therein shall relieve the sheriff from being subject to all the duties, responsibilities and liabilities theretofore devolving upon him by law.

This argument is unsound. The fallaciousness of it consists in the assumption of the defendant that the relation created between the sheriff and those he selects and employs as his assistants is a private and domestic one, that of master and servant, and governed by the law concerning such a relation. This is palpably an erroneous view of the matter. As soon as the sheriff selects and employs assistants they become the servants of that municipality for whom the sheriff is acting, as the agent, and they become amenable for their official misconduct, in the performance of the public duties devolved upon them in their respective positions, to the public. In concise terms they are minor public officials acting under the supervision of an official of a higher rank or grade. And further, the common jail of a county is not a private institution, but is, as has been well said by Mr. Chief Justice Gummere in *Freeholders* v. *Kaiser,* 46 *Vroom* 15, a county institution, and the burden of its maintenance has always rested

upon the county." It is a public institution necessary to the protection and welfare of the community. To maintain it properly, it must have a head-keeper and assistants, because the inmates confined therein are mainly of the criminal classes and need strict and constant surveillance. The duties to be performed in and about the care and maintenance of the common jail are public duties, in the proper performance of which the public is interested. The mere fact that the sheriff is the person designated who shall select and employ the assistants does not make such assistants his employes whom he can discharge at will. In making the selection and employment he does so as agent of the state. The selection and employment of assistants to aid him in the performance of public duties required of him must devolve upon some one, and the legislature, in this instance, has cast that duty upon the sheriff, and judiciously so, for he is most nearly interested in that the persons selected and employed to aid him in the discharge of such public duties shall be capable and honest. That the warden of the common jail, in caring for it, is engaged in discharging a public duty in the interest of the people of Hudson county, cannot be successfully controverted. He, as well as the sheriff, is responsible to the county for any official neglect, notwithstanding the fact that the sheriff stands surety for the warden's official conduct. The fact that the county pays the warden for such services out of the county funds makes him an employe in the service of the county, and therefore within the protection of the Civil Service law.

To adopt any other construction would tend to destroy the civil service, through the means of which the employes in all departments in the service of the state are enabled to attain a high standard of efficiency, and would practically prevent the application of the Civil Service law to every department of public service in this state, where clerical assistants are selected and appointed by the head of such department. This becomes strikingly manifest from an examination of the act fixing the compensation of certain public officers of the state (*Comp. Stat.*, p. 4632), the second section of which pro-

vides: "That the public officers hereinafter mentioned are hereby authorized by and with the approval of the governor of this state to employ assistants as may be necessary in the several departments, provided that the annual cost thereof shall not exceed the amounts hereinafter allotted to the several departments for that purpose." Then follows a schedule of the departments to each of which is allotted a certain sum of money to be paid to the persons employed in each of the departments, who shall make out their several bills, monthly, &c., and present the same to the comptroller, and on his warrant to be paid by the treasurer of the state.

These persons are all employed by the heads of the departments with the approval of the governor, and yet it would hardly be said that they were not state officials protected by the Civil Service law. Another example to be noted is section 6 of *Comp. Stat., p.* 4634, by which the secretary of state is allowed $4,000 for clerk hire, for which he is required at all times to employ and keep in his office a sufficient number of competent clerical assistants.

An examination of the statutes on this subject shows that nearly all the clerks and assistants who are subject to the Civil Service law are employed by the head of the department and paid by the state. And this course is followed in each of the counties of the state where the clerk of the county and the surrogate are required to employ sufficient assistants for which the county pays, and there has been no substantial reason given why the sheriff's appointees after the sheriff was put on a salary and required "to select and employ the necessary deputies and assistants who shall receive such compensation to be paid monthly by the proper disbursing officer of the county," should stand on a different basis. That the powers of the sheriff are subject to statutory regulation can be hardly doubted, when for a century the legislature has assumed this power. *State* v. *De Lorenzo,* 52 *Vroom* 613. It has granted to the sheriffs the care of the county jails; it has taken such power from the sheriff and committed it to the board of chosen freeholders, where it remains in most of the counties of this state, and it has in counties of the first class

committed to the sheriff the control and management of the county jail.

If the warden of the county jail is beyond the protection of the Civil Service law, simply because he is selected and employed by the sheriff, then every other clerical position which the law requires certain public officers to fill with assistants selected and employed by them, but paid by the county or state, would also be beyond the reach of this law. Again, if the defendant's contention were upheld it would strike a disastrous blow to the well being of the state asylums and other institutions of that class where the superintendents thereof are empowered to select and employ their assistants, and yet it has never been doubted that such assistants when appointed hold their several offices under the Civil Service law.

It must be borne in mind that the object of the legislature was to secure by means of the Civil Service law efficient public service in the state institutions and in the governmental departments of this state. Therefore, in applying this statute to any particular given case the court must above all recognize and enforce the broad public policy which underlies it. In order to carry out the legislative policy which had in view the welfare of the people, in that, it may receive good and efficient service from its public servants the widest range should be given to the applicability of the law.

This efficient service to which the public is entitled cannot be well subserved by a change in the persons who are appointed and employed by the sheriff to take care of the jail every time a new sheriff is elected, since he can hold his office for no longer period than three years, and is ineligible to a re-election to succeed himself.

It is a self-demonstrative proposition that the warden of a jail during the three years of his incumbency of that office acquires by experience valuable knowledge of the duties required of him and efficiency in their discharge. He is more valuable in the public service than one who has not had that experience. There is nothing in the Civil Service law which prevents the discharge of an employe who may be found guilty

of incompetency or official misconduct, upon charges made and after a hearing. The general design of the act was to put such positions beyond political control, partisanship and personal favoritism, in order to secure to the state and county the best public service. The Supreme Court in sustaining the defendant's demurrer relied upon a prior decision of that court in *Arbuckle* v. *Kelly,* 49 *Vroom* 94, which was held to be controlling.

The principle involved in that case is now before this court, for the first time, in the case *sub judice,* and the views expressed by us are a disapproval of the doctrine laid down in Arbuckle *v.* Kelly, and lead to a reversal of the judgment of the Supreme Court with direction that the demurrer be overruled.

*For affirmance*—None.

*For reversal*—The Chancellor, Trenchard, Bergen, Minturn, Kalisch, Bogert, Vredenburgh, Congdon, Treacy, JJ.   9.