24 N.J. Super. 65 (1952)
93 A.2d 637
JOHN SCANCARELLA, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF CIVIL SERVICE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1952.
Decided December 29, 1952.
*67 Before Judges EASTWOOD, GOLDMAN and FRANCIS.
Mr. James A. Major argued the cause for plaintiff-appellant (Messrs. Major & Carlsen, attorneys).
Mr. John W. Griggs, Deputy Attorney-General, argued the cause for defendant-respondent (Mr. Theodore D. Parsons, Attorney-General).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
Appellant is chief clerk in the office of the sheriff of Passaic County. Prior to November 14, 1951 his annual salary was $6,600. On that day he received the following letter from the sheriff:
"This is to advise you that beginning November 14th, 1951, your salary as Chief Clerk has been changed from $6600.00 to $5300.00 per year.
 Very truly yours,
 (Signed) NORMAN E. TATTERSALL,
 Sheriff."
The legal propriety of this reduction is the sole issue for determination.
The record discloses that Scancarella was appointed as a clerk in the sheriff's office on a temporary basis on September 24, 1928 and received a permanent appointment as senior clerk on May 13, 1931. Subsequently he was permanently designated assistant chief clerk on January 1, 1939 and chief clerk on March 1, 1940. Salary increases were granted at intervals, and the last one on November 10, 1948 brought his annual compensation to $6,600.
The County of Passaic adopted the Civil Service Act (R.S. 11:22-1) in 1912 (see Steel v. Freeholders of Passaic *68 County, 89 N.J.L. 609 (E. & A. 1916)), and the sheriff's employees, such as the chief clerk, are within the benefit and protection of the act. It is undisputed that Scancarella's employment as chief clerk since March 1, 1940 was within the classified service as defined by sections 2 and 3 thereof (R.S. 11:22-2, 3), and that he was so listed on the records of the Department of Civil Service.
An appeal was taken from the salary reduction order to the Department of Civil Service. That department disposed of the matter simply by a letter to the effect that the Attorney-General had advised that the sheriff had the authority to reduce appellant's compensation if he so desired.
Appeal was then taken to the Appellate Division which remanded the record to the department for full hearing on the problem. On reconsideration the matter was submitted on the stipulation of facts which appears in the appendix, which facts are substantially as they are set forth above. The department filed a memorandum sustaining the action of the sheriff as authorized by R.S. 40:41-31.
The memorandum said, among other things, that "the Sheriff acted within his authority in setting the annual salary of the appellant at $5,300 and there is no basis to any claim of discrimination against the appellant."
As indicated, no testimony was taken and no facts were before the Department beyond those contained in the stipulation and in its own records with respect to Scancarella's status as a classified civil service employee. Consequently, when the department spoke of the absence of "basis to any claim of discrimination" the statement was predicated entirely upon the statute, R.S. 40:41-31, and not upon proof of any facts which may have motivated the sheriff's action.
R.S. 40:41-31 provides as follows:
"The sheriff shall select and employ the necessary deputies, chief clerks and other employees, who shall receive such compensation as shall be recommended by the sheriff and approved by the board of chosen freeholders, except that in counties of the second class having a population in excess of two hundred thousand the salaries of the *69 undersheriff and chief clerk or executive clerk shall be fixed by the sheriff. In such counties the amount fixed for the undersheriffs shall not be in excess of three-fourths, and that fixed for the chief clerk or executive clerk shall not be in excess of three-fifths, of the salary of the sheriff, * * *."
As the historical note, appearing in the New Jersey Statutes Annotated (p. 624), indicates this statute authorizing the sheriff to select certain employees first appeared in 1906 (L. 1906, c. 53, sec. 4). It was amended quite frequently down through 1927. In the early years salaries of these employees were fixed by the judges of the Court of Common Pleas. The 1920 amendment provided for such salaries as approved by the board of freeholders. And in 1921 the Legislature specifically fixed some of the salaries, including that of chief clerk, in certain counties. The italicized portion set out above represents the 1927 amendment (L. 1927, c. 304, p. 573), and it has continued unchanged to the present.
Section 38 of the Civil Service Act, R.S. 11:22-38, provides:
"No officer, clerk or employee holding a position in the competitive class shall be removed, discharged, fined or reduced, except as provided in section 11:22-6 of this title as to probationers, until he has been furnished with a written statement of the reasons for such action by the appointing authority and been allowed a reasonable time to make answer thereto. A copy of the statement or reasons therefor and the answer thereto, with the action of the appointing authority, shall forthwith be furnished to the commission and entered upon its records, and shall also be entered on the records of the department or office in which the removed, discharged, fined or reduced person was or is employed. * * *."
"Reduction," as used here, means reduction in rank, status or compensation. Tanis v. Passaic County, 126 N.J.L. 303, 306 (E. & A. 1941). However, no effort was made by the sheriff to comply with this statutory requirement. His action arose from the belief that R.S. 40:41-31, supra, conferred the arbitrary powers on him as sheriff of a second class county (which Passaic County is conceded to *70 be) to adjust, raise or lower the salary of a chief clerk at will, without regard to Civil Service Act requirements.
The design of civil service legislation was to secure tenure during good behavior for those employees who come within its scope, Handlon v. Town of Belleville, 4 N.J. 99, 109 (1950), and to give protection against dismissal and other types of discrimination to those holding positions which the Legislature placed in the classified service. Young v. Civil Service Commission, 127 N.J.L. 329, 331 (Sup. Ct. 1941). And these beneficent purposes apply to the employees of a sheriff's office who qualify therefor, as well as to those of any other department of a county. Young v. Civil Service Commission, supra; Ross v. Freeholders of Hudson County, 90 N.J.L. 522 (E. & A. 1917); Sullivan v. McOsker, 84 N.J.L. 380 (E. & A. 1913).
It is obvious, therefore, that the validity of the sheriff's action depends upon the relation between the two statutes, set forth. Does R.S. 40:41-31 repeal by implication so much of the benefits of the Civil Service Act as safeguard a chief clerk's pay against reduction without just cause and hearing? Or can the two enactments stand as in pari materia, each taking its place in an overall, homogeneous, legislative mosaic?
A just and proper solution of the problem cannot be made without a deep awareness of the beneficent purposes of civil service legislation. Those purposes were to put positions in the classified service beyond political control, partisanship and personal favoritism in order to secure to the county the best public service. So, in recognition of this broad public policy, the courts should give the widest possible range to the application of the law. Sullivan v. McOsker, supra.
Implied repealers are not favored in the law and are not declared to exist unless the later statute is "plainly repugnant to the former and is designed to be a complete substitute for the former." Goff v. Hunt, 6 N.J. 600, 606 (1951).
*71 In our scheme of government the courts have a duty to reconcile legislative enactments dealing with the same subject-matter or with a phase of the same subject-matter, and to give effect to both expressions of the legislative will wherever it is possible to do so. We find no difficulty here in reconciling these two statutes and in finding the intention of the Legislature to regulate in connection with the salaries of the named employees of the office of a second-class county sheriff in a manner consistent with the full and fair application of the Civil Service Act.
When the 1927 amendment to R.S. 40:41-31 was enacted, the Legislature was aware, of course, that some or all of the second-class counties had adopted the Civil Service Act. If it intended to confer upon an incoming sheriff the authority to elevate and lower a chief clerk's salary at will and regardless of civil service, undoubtedly it would have said so. The full text of the act prior to 1927 indicates an intention to permit the sheriff in counties where the civil service system had not been adopted to have full control over the selection and employment of the employees of his office. Where, however, the system was installed  and this condition exists now in all but four of our counties  as soon as the act of selection and employment had been accomplished, the employees immediately became servants of the county and vested with all the rights and privileges of the Civil Service Act. Sullivan v. McOsker, supra. The McOsker case was decided in 1913. It dealt specifically with the question of whether or not this act in its 1905 form operated to exclude a sheriff's office employees from the civil service system. And the Court of Errors and Appeals declared that it did not.
The 1905 act was substantially the same as the present one, except that the board of freeholders determined the compensation, and except for the language of the 1927 amendment which is involved in this proceeding.
The 1927 addition provided that the sheriff's employees in all counties but those of the second class "shall receive *72 such compensation as shall be recommended" by him and approved by the board of freeholders. And it then ordained that in the second-class counties the salaries of the under-sheriff and chief clerk shall be fixed by the sheriff.
The McOsker case was approved by the Court of Errors and Appeals in 1917 in Ross v. Freeholders of Hudson County, supra, which involved an attempted discharge of an employee by the sheriff. And it was followed as late as 1941 in Young v. Civil Service Commission, supra.
In this state of things, in our judgment, the 1927 amendment was intended to give the sheriffs of second-class counties sole authority over the selection and employment of a chief clerk and to fix his salary initially within the prescribed range. Then in such counties where the civil service system had been introduced, the two statutes were to stand in pari materia, as a result of which the chief clerk was to pass into the protective confines of the Civil Service Act and his salary thereafter unassailable except in the manner approved thereby.
In the light of all the circumstances no other construction is reasonable. To hold otherwise would be to subvert an important part of the public policy manifested by the civil service legislation. The contrary view would permit each newly elected sheriff to reduce the salary of a career chief clerk to the minimum authorized by the statute. This power could be invoked for purely political reasons or to serve any other personal motive of the sheriff, such as a desire to persuade the incumbent clerk to resign. The existence of such power is so incompatible with the nature of public service as the Legislature has recognized that service that it should not be declared to exist in the absence of the clearest kind of legislative declaration.
Accordingly, the order of the sheriff reducing appellant's salary and the order of the Department of Civil Service approving the reduction are reversed, with directions to reinstate the original rate of compensation.