**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0990-19

CRYSTAL SAYLOR,

    Petitioner-Appellant,

v.

BOARD OF EDUCATION
OF THE TOWN OF WEST
NEW YORK, HUDSON
COUNTY,

    Respondent-Respondent.

_____

Argued March 9, 2021 – Decided May 12, 2021

Before Judges Fisher, Moynihan, and Gummer.

On appeal from the New Jersey Commissioner of Education, Docket No. 219-8/18.

William P. Hannan argued the cause for appellant (Oxfeld Cohen, PC, attorneys; Sanford R. Oxfeld, of counsel; William P. Hannan, of counsel and on the briefs).

Afshan T. Ajmiri Giner argued the cause for respondent West New York Board of Education (Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys;

Lester E. Taylor III, of counsel; Afshan T. Ajmiri Giner, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Sadia Ahsanuddin, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Crystal Saylor served as the administrative assistant to the superintendent of schools before she was terminated from employment with respondent Board of Education of the Town of West New York (the Board) for conduct unbecoming an employee. She appeals from the final decision of the Commissioner of Education who adopted the initial decision of the administrative law judge (ALJ)—which affirmed her termination of employment without a tenure hearing, see N.J.S.A. 18A:6-10—and dismissed her petition. She argues the Commissioner erred in concluding she was not under tenure as a secretary, pursuant to N.J.S.A. 18A:17-2, when she was terminated. We conclude Saylor has met her burden of proving that the Commissioner's action was arbitrary, capricious, or unreasonable, DiNapoli v. Bd. of Educ. of Twp. of Verona, 434 N.J. Super. 233, 236 (App. Div. 2014), and reverse.

Saylor was hired by the Board as the secretary to the Business Department commencing January 16, 2010, and entered an employment contract for the remainder of the 2009-2010 school year, with an annual salary of $33,000. She was reappointed to the same secretarial position for the 2010-2011 and 2011-2012 school years, but in November 2011 the Board contracted to employ Saylor for the 2011-2012 school year as the Administrative Assistant to the Assistant Superintendent of Educational and Personnel Services, with an annual salary of $40,000. She was reappointed to that position for the 2012-2013, 2013-2014 and 2014-2015 school years with modest raises. On July 1, 2015, the assistant superintendent with whom Saylor had been working since November 2011 was promoted to superintendent. Two weeks later, the Board approved the new superintendent's recommendation to appoint Saylor as Secretary to the Superintendent of Schools at a pro-rated salary of $72,500. She remained in that position until her termination in June 2018.

Saylor filed an appeal to the Commissioner of Education claiming she was a tenured employee under N.J.S.A. 18A:17-2, and the Board erred by failing to file tenure charges and affording her a hearing pursuant to N.J.S.A. 18A:6-10. The matter was transferred to the Office of Administrative Law and, after an evidentiary hearing at which Saylor and the superintendent were the only

3

witnesses, the ALJ issued an initial decision affirming Saylor's termination and dismissing her petition, finding she did not have tenure because she had insufficient time in the Business Department secretarial position to qualify, and her "duties [as] Administrative Assistant to the Superintendent [were] significantly different" from her "job description for Secretary to the Business Department [which] was consistent with the common understanding of the duties of a secretary," and those duties were "not interchangeable." The ALJ found Saylor was a "confidential" employee who was "without union or statutory rights."

The Commissioner focused on Saylor's job responsibilities in "agree[ing] with the ALJ that [Saylor] was not employed as a secretary when she held the position of Administrative Assistant to the Superintendent, and therefore did not have tenure rights when she was terminated."

In our "limited role" in reviewing an agency decision, In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)), we reverse an agency's decision "only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy," In re Musick, 143 N.J. 206, 216 (1996). We "should not disturb an administrative agency's determinations or findings unless there is a

A-0990-19

clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees, 194 N.J. 413, 422 (2008).

While we "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system," ibid., we are not bound by an "agency's interpretation of a statute or its determination of a strictly legal issue," Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). "We review [an] agency's legal conclusions de novo." DiNapoli, 434 N.J. Super. at 236. The Commissioner mistakenly construed N.J.S.A. 18A:17-2 in concluding, under the facts presented, Saylor was not a secretary during her service to the assistant superintendent and, later, to the superintendent.

"Any person holding any secretarial or clerical position or employment under a board of education of any school district or under any office thereof" gains tenure under N.J.S.A. 18A:17-2(b), after

> 1. The expiration of a period of employment of three consecutive calendar years in the district or such shorter period as may be fixed by the board or office employing him, or
> 2. Employment for three consecutive academic years, together with employment at the beginning of the next succeeding academic year, an academic year being the period between the time when school opens in the

5

district after the general summer vacation and the beginning of the next succeeding summer vacation[.]

The statute further provides anyone who acquires tenure "shall hold his office, position or employment under tenure during good behavior and efficiency and shall not be dismissed or suspended or reduced in compensation, except for neglect, misbehavior or other offense and only in the manner prescribed by" N.J.S.A. 18A:6-9 to -29.

"[T]he language of N.J.S.A. 18A:17-2 limits the retention of tenure to the time during which the employee holds her secretarial office, position or employment." DiNapoli, 434 N.J. Super. at 239. "To acquire the security of tenure, the precise conditions enunciated in the applicable statute must be met." Id. at 237-38. Thus, the determination of this case turns on whether Saylor held a secretarial position, or in the words of the Legislature, "any secretarial position," for the required statutory period.

The Commissioner differentiated Saylor's position with the Business Department from her subsequent positions with the assistant superintendent and superintendent because "her responsibilities, as well as salary, increased dramatically. She went from answering phones and typing documents to preparing for Board meetings, coordinating district-wide professional development activities, renewing contracts for the early childhood program, and

6

coordinating the Read Across America program."  The Commissioner agreed

with the ALJ's reliance on our unpublished decision in <u>Burger v. Board of</u>

<u>Education of the Borough of Maywood</u>, No. A-5223-10 (App. Div. June 5,

2012),

> where the ALJ, Commissioner, and Appellate Division
> all found that a tenured secretary was not entitled to the
> position of Administrative Assistant to the
> Superintendent over a non-tenured employee, after the
> hours of her secretary position were reduced as part of
> a reduction in force.  Just as the Administrative
> Assistant to the Superintendent in <u>Burger</u> was not
> considered to be a secretary because of her increased
> responsibilities – including supervising other
> secretaries in the Superintendent's office, coordinating
> district-wide administrative activities, overseeing the
> hiring of substitute teachers, and preparing for Board
> meetings – the petitioner's job responsibilities also
> extended far beyond her former duties as a secretary, so
> the positions are not substantially similar.

We do not agree that our unpublished decision in <u>Burger</u> is controlling[1] or

apposite.  Significantly, as counsel for the Board informed during oral argument,

no job descriptions were adopted by the Board for any of the positions Saylor

---

[1]  Indeed, <u>Burger</u> cannot be controlling because, by rule, it has no precedential value.  <u>R.</u> 1:36-3.

held.[2] Largely, the evidence of Saylor's duties was presented by Saylor and the superintendent and supplemented by some documents.

Saylor testified to and outlined in her merits brief her core duties as the Administrative Assistant to the Assistant Superintendent included:

> answering phones; making appointments for [the assistant superintendent]; sending faxes and emails for [the assistant superintendent]; preparing [the assistant superintendent] for upcoming meetings; preparing requisitions for supplies; preparing reassignments for in and out of district meetings and workshops; keeping a calendar for [the assistant superintendent] and updating her on all district events and meetings; preparing for field trips and fundraisers for Board meetings; filing papers; typing memos; and interacting with parents who complained and wished to meet with [the assistant superintendent].

As Administrative Assistant to the Superintendent, she essentially completed the same tasks with the addition of: "[p]reparing agenda for Board meetings; [p]reparing professional development days; [p]reparing for the Read [A]cross America event by making memos, mailing out invitations, keeping track of attendees, and ordering breakfast; [c]ollecting and keeping contracts for early childhood, as well as renewing them; and [m]aking accommodations for

---

[2] The ALJ asked the superintendent: "You have not eyeballed a document that says job description for an administrative assistant to any of the cabinet, you know, positions, correct?" The superintendent replied: "Correct. I don't do those ordinary things. That's what you have secretaries for."

out-of-district seminars." During her testimony before the ALJ, Saylor acknowledged her duties in these two administrative assistant positions "were greater and beyond the scope of clerical or secretarial duties than . . . when [she was] the secretary in the Business Department." But petitioner maintained her job was still secretarial in nature; although her responsibilities expanded, she said they were still in line with "the goal of handling correspondence and managing a routine and detail work for her superior."

The superintendent testified that Saylor interfaced with the public, other district employees and the Board on her behalf and served as a confidential assistant, unlike the other secretaries in the District. The superintendent further emphasized that Saylor had "duties district-wide that a normal secretary would not" have, such as "prepar[ing] things and coordinat[ing] things district-wide" and the confidentiality of her position that required "prepar[ing] many confidential documents for [the superintendent]" and reviewing resumes for position qualifications for the superintendent to recommend to Human Resources.

In her merits brief, Saylor acknowledges her position took on a district-wide element but notes that "[t]he [s]uperintendent is responsible for the district-wide duties; Saylor simply executed tasks for the [s]uperintendent through the

means afforded a typical secretary." The record is clear that she took on additional duties when she left the Business Department, commensurate with the increased responsibilities of the assistant superintendent and superintendent. But she continued to perform secretarial duties.

In fact, when questioned by the ALJ about the difference between a secretary and administrative assistant, the superintendent focused on, what she termed, the "confidential title" of the position:

> [THE COURT]: The person who's the assistant to the superintendent, does it matter, in terms of what they're doing, that the title is "secretary" versus "administrative assistant"? That's one question.
>
> [SUPERINTENDENT]: Okay.
>
> [THE COURT]: Yes or no?
>
> [SUPERINTENDENT]: I'm going to say, for the purposes of confidentiality, they are two different things. Administrative - -
>
> [THE COURT]: What do you mean by "purpose of confidentiality"?
>
> [SUPERINTENDENT]: Well, secretary - - secretary to the superintendent is now dealing with the Board of Education as well and things that are being prepared for the Board of Education.
>
> [THE COURT]: But an administrative assistant is also doing that, no?

[SUPERINTENDENT]: It's a - - it's a confidential title.

[THE COURT]: Which?

[SUPERINTENDENT]: Both. I'm going to say both, in this capacity to the superintendent because it's attached to the superintendent.

[THE COURT]: So what's the - - is the secretary to the superintendent, that confidential position, worth a salary of 72,500, is that synonymous with the administrative assistant to the superintendent, at a salary of 72,500? Are they synonymous?

[SUPERINTENDENT]: I don't think I understand.

[THE COURT]: Are they synonymous?

[SUPERINTENDENT]: No, they're not.

[THE COURT]: Do you have a different secretary? You have a secretary and an administrative assistant?

[SUPERINTENDENT]: There is an administrative assistant that is part-time that also works with me as a part-time basis.

[THE COURT]: Did the titles change between when Ms. Saylor was appointed and when she was fired? Did the labels change in those three years when you were the superintendent?

[SUPERINTENDENT]: Oh, the superintendent? No.

[THE COURT]: So when she was hired, she was hired as a secretary.

[SUPERINTENDENT]: Yes.

11

[THE COURT]: But when she was fired - - I'm not sure it specifies. But when she got that salary change, she was - - it was administrative assistant to the superintendent.

[SUPERINTENDENT]: But that's in a template. You're reading that in a template that they did in an office downstairs where there are many clerical mistakes. The resolution read "secretary." It's a different position.

[THE COURT]: Okay. So officially and formally, Crystal Saylor was secretary to the superintendent - - happened to be you - - and that's a confidential position to a cabinet member. Is that accurate?

[SUPERINTENDENT]: To the superintendent.

[THE COURT]: To the - - but the superintendent is a cabinet position?

[SUPERINTENDENT]: Leads the cabinet.

[THE COURT]: What?

[SUPERINTENDENT]: I'm outside of - - I lead - - I oversee the cabinet.

[THE COURT]: Okay.

[SUPERINTENDENT]: I'm outside the cabinet.

[THE COURT]: You're the president.

[SUPERINTENDENT]: Yes.

[THE COURT]: They're your - - they're your cabinet.

12

[SUPERINTENDENT]:  Yes.

[THE COURT]:  Okay, okay.

[SUPERINTENDENT]:  So the cabinet members have the administrative assistants; the superintendent has the confidential secretary assigned to the superintendent.

The superintendent later explained:

> [a] confidential employee is one that maintains all records totally confidential, can manage and work with documents that no one else will see other than myself, and when I'm writing, to show them to someone else. They should never leave the purview of her sight or his sight, for that matter - - I'm not being sexist - - and can represent me and my signature in the entire district.

She clarified there were other titles in the district that were "confidential": administrative assistants.  When asked on cross-examination if the administrative assistants had "the same responsibilities as [her] secretary[,]" the superintendent replied affirmatively.  The Board attorney followed, asking "isn't it true, . . . as testified by . . . Saylor, the secretary to the superintendent does basically a lot of the same responsibilities as the admin assistants do, but also, a number of more responsibilities, correct?"  The superintendent answered: "Yes."

The testimonial evidence was not the only proof that showed the Board did not differentiate between "secretary" and "administrative assistant."  At least

13

one employment contract in the record uses the term "Administrative Assistant to the Assistant Superintendent." A "Salary Change Form" for "Human Resource Dept. Only" also designates the job title as "Administrative Assistant." But the resolution set forth in the details for the Board Work Session/Business Meeting Agenda for July 15, 2015 reads:

> WHEREAS, the Superintendent of Schools has a need for a Secretary to the Superintendent of Schools; and
> WHEREAS, Crystal Saylor currently holds the position of secretary assigned to the Board Office; and
> WHEREAS, the Superintendent of Schools in recommending the promotion of Crystal Saylor to the position of Secretary to the Superintendent of Schools.
> NOW THEREFORE, BE IT RESOLVED, that upon the recommendation of the Superintendent of Schools, Crystal Saylor is hereby appointed as Secretary to the Superintendent of Schools effective immediately at the pro-rated salary of $72,500.00.

Even the Board attorney, when questioning the superintendent, used the terms interchangeably:

> [BOARD COUNSEL]: With respect to the position of secretary to the superintendent and/or administrative assistant to the superintendent, it's accurate that Ms. Saylor did not serve three years and a day in that capacity, correct?
>
> [SUPERINTENDENT]: In which capacity?
>
> [BOARD COUNSEL]: As - - when she worked for you as superintendent, she served just under three years right?

14

[SUPERINTENDENT]:  Yes.

The evidence presented does not support the Commissioner's conclusion that the positions held by Saylor after she left the Business Department were not secretarial positions.  The Board did not adopt job descriptions differentiating the positions.  Saylor's continued function as a secretary, in addition to the additional duties required by her positions with the superintendent and assistant superintendent evokes our nearly-sixty-year-old holding:

> We . . . take the view that where an employee holding a position covered by tenure is promoted to a position which encompasses his former duties and additionally requires the performance of services which are not covered by tenure, and he thereafter continues to render services in both capacities, his right in his tenure position continues until terminated in accordance with the statute.
>
> [Quinlan v. Bd. of Educ. of Twp. of N. Bergen, 73 N.J. Super. 40, 51-52 (1962).]

We think that holding has application here, especially where the lines between secretary and administrative assistant are so blurred.  If a secretary moves to a position that still requires secretarial duties, but adds additional duties in a position that is not specifically culled from the tenure statute's "secretarial position," we see no reason why the employee should not retain tenure-track status.

15

Indeed, the statute allows a person holding "any secretarial position" to gain tenure. N.J.S.A. 18A:17-2(b) (emphasis added). Saylor moved from one secretarial position to others in which she continued her secretarial role with extra duties required by her superior's status. The evidence supports that Saylor was still referred to as a secretary, buttressing the conclusion her positions were still secretarial.

Our interpretation is consistent with the liberal construction accorded the Tenure Act in order "to achieve its beneficent ends." Spiewak v. Bd. of Educ. of Rutherford, 90 N.J. 63, 74-75 (1982). "[S]ince tenure statutes are intended to secure efficient public service by protecting public employees in their employment, 'the widest range should be given to the applicability of the law.'" Barnes v. Bd. of Educ. of the City of Jersey City, 85 N.J. Super. 42, 45 (App. Div. 1964) (quoting Sullivan v. McOsker, 84 N.J.L. 380, 385 (E. & A. 1913)). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Kasper v. Bd. of Trs. of the Tchrs' Pension & Annuity Fund, 164 N.J. 564, 581 (2000) (citation omitted); see also Matturri v. Bd. of Trs. of the Jud. Ret. Sys., 173 N.J. 368, 381-82 (2002). We conclude the Commissioner did not properly construe N.J.S.A. 18A:17-2 in concluding

16

Saylor did not hold a secretarial position in service to the assistant superintendent and superintendent.

We note, although the Commissioner adopted the ALJ's initial decision as the final decision, the final decision did not discuss the ALJ's conclusion that Saylor was a "confidential employee." To the extent it was adopted, we disagree that that designation excluded Saylor from tenure.

Other than the superintendent's testimony that Saylor was considered a "confidential employee," we see no other evidence in the record to support that conclusion. Again, there was no job description or other documentary proof, including the Board resolution appointing Saylor to the position, that established the position was "confidential." Furthermore, there is no evidence that Saylor was designated a confidential employee under N.J.S.A. 11A:3-4(h), the statute cited by the ALJ in support of her finding that Saylor was one, or that a corresponding "certification and appointment . . . [was] recorded in the minutes of the Civil Service Commission" as required by that statute.[3]

---

[3] N.J.S.A. 11A:3-4(h) provides:

> The State unclassified service shall not be subject to the provisions of this title unless otherwise specified and shall include the following:
>
> . . . .

Moreover, N.J.S.A. 18A:17-2 does not carve out "confidential" secretarial positions from its purview. Again, the Legislature conferred tenure status on any secretarial position. See Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014) ("There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose[.]"). "[T]he words of the enactment are to be accorded a rational meaning in harmony with the obvious intent and purpose of the law." State v. Brown, 22 N.J. 405, 415 (1956); see also State v. Tischio, 107 N.J. 504, 511 (1987). "Where the Legislature's intent is remedial, a court should construe a statute liberally." Young v. Schering Corp., 141 N.J. 16, 25 (1995).

If the Legislature intended to exclude "confidential employees" from N.J.S.A. 18A:17-2, it could have done so directly. We therefore reject any interpretation of the statute that would exclude "any secretarial position" because "it is not [our] function . . . to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero v. Penn, 183 N.J.

---

h. One secretary and one confidential assistant to each department head, board, principal executive officer and commission. Each certification and appointment hereunder shall be recorded in the minutes of the Civil Service Commission[.]

477, 492 (2005) (third alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We will not "'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment,' or 'engage in conjecture or surmise which will circumvent the plain meaning of the act.'" Ibid. (first quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952); then quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)).

We conclude Saylor achieved tenure in the secretarial position she held since beginning employment with the Board in 2010 and continuing until her termination in 2018. She was thus entitled to face tenure charges at a tenure hearing. N.J.S.A. 18A:6-10.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0990-19